UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JEREMY MILLER,

                              Plaintiff,

                                                          Case # 25-CV-06203-FPG

v.

                                                          DECISION AND ORDER

WEGMANS FOOD MARKETS, INC.,

                              Defendant.

## INTRODUCTION

Plaintiff Jeremy Miller brings this action against Defendant Wegmans Food Markets, Inc. Plaintiff alleges that Defendant violated the Americans with Disabilities Act of 1990 ("ADA"), the New York State Human Rights Law ("NYSHRL"), and the New York Labor Law ("NYLL"). ECF No. 1. Plaintiff brings six causes of action, three of which are brought pursuant to the ADA, alleging: (1) disability discrimination; (2) disclosure of disability information; and (3) retaliation for opposing discriminatory practices. *Id.* ¶¶ 63–89. Plaintiff also brings two claims pursuant to NYSHRL, alleging: (1) disability discrimination; and (2) retaliation for opposing discriminatory practices. *Id.* ¶¶ 90–105. Finally, Plaintiff claims retaliation for opposing unlawful practices under NYLL § 740. *Id.* ¶¶ 106–18.

On October 16, 2025, Defendant moved to dismiss Plaintiff's claims pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6).[1] ECF No. 12. Plaintiff opposes the motion. ECF No. 17. For the reasons that follow, Defendants' motion is GRANTED IN PART AND DENIED IN PART.

---

[1] Defendant also moved to dismiss the entirety of the complaint pursuant to Rules 4(m) and 12(b)(5). ECF No. 12-5 at 9, 13–14. However, Plaintiff subsequently moved to extend time to complete service and deem service timely completed, ECF No. 14, which the Court granted, ECF No. 16. Therefore, Defendant's motion is denied as moot.

**LEGAL STANDARD**

Rule 12(b)(6) provides that a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In reviewing a Rule 12(b)(6) motion, a court must "draw all reasonable inferences in Plaintiff['s] favor." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011). To survive a motion to dismiss, a complaint must contain sufficient factual material, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The application of this standard is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

**BACKGROUND**

The following facts are derived from Plaintiff's complaint. *See* ECF No. 1. Plaintiff began working for Defendant in 2003, and his job duties included warehouse inventory. *Id.* ¶¶ 23–24. Although Plaintiff has never received an official diagnosis, Plaintiff suffers from a speech impediment. *Id.* ¶¶ 25–26. The speech impediment, however, did not interfere with Plaintiff's ability to perform the essential functions of his job as a warehouse employee. *Id.* ¶ 29.

Defendant used crew sheets to distribute work assignments, which were available to non-managerial employees. *Id.* ¶¶ 30–31. Around 2016, Plaintiff observed that the initials "DB" were placed on the crew sheets next to his name and two other employees who had disabilities. *Id.* ¶¶ 32–33. When Plaintiff asked his supervisors why the initials were placed next to his name, he was told that it was to indicate that Plaintiff was disabled. *Id.* ¶¶ 34–36.

During a meeting with an employee from Defendant's Human Resources department and a managerial employee with responsibility over the warehouse, Plaintiff disclosed that he had a speech impediment and asked that the notation be removed from the crew sheets. *Id.* ¶¶ 40–41. Notwithstanding, "DB" continued to be notated on the crew sheets. *Id.* ¶ 42. Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on October 13, 2018. *Id.* ¶ 43. The EEOC concluded that Plaintiff was discriminated against in violation of the ADA and asked Defendant to engage in conciliation, but Defendant refused. *Id.* ¶ 44. The EEOC issued Plaintiff a right-to-sue letter on August 19, 2020. *Id.* ¶ 45. Plaintiff, however, did not pursue his claim. *Id.* ¶ 46.

In May 2022, Plaintiff noticed that the "DB" notation continued to be placed next to his name. *Id.* ¶ 47. Plaintiff again asked for the notation to be removed for many months but was unsuccessful. *Id.* ¶ 49. On January 13, 2023, Plaintiff filed a second charge of discrimination with the EEOC and the New York State Division of Human Rights ("NYSDHR"). *Id.* ¶¶ 49, 100. Over the next year, the EEOC investigated Plaintiff's charge. *Id.* ¶ 50.

While the EEOC investigation was pending, Defendant terminated Plaintiff from employment on January 5, 2024, reasoning that Plaintiff had not come to work despite signing up for an extra shift. *Id.* ¶¶ 51–52. However, Plaintiff had not signed up for an extra shift. *Id.* ¶ 54. The error occurred due to a glitch in the system, which made it appear that employees signed up for shifts that they had not signed up for. *Id.* ¶ 55. Even though Plaintiff was not the only employee to which this glitch occurred, he was the only employee who had been disciplined as a result. *Id.* ¶ 56. On October 21, 2024, Plaintiff filed a third charge of discrimination with the EEOC alleging unlawful retaliation. *Id.* ¶ 59.

3

On December 16, 2024, the EEOC found reasonable cause to believe that Defendant violated the ADA and asked Defendant to engage in conciliation, but Defendant refused. *Id.* ¶¶ 60–61. On January 16, 2025, the EEOC issued Plaintiff right-to-sue letters on the second and third charges of discrimination. *Id.* ¶ 62. Plaintiff commenced this action on April 15, 2025. *See* ECF No. 1.

## DISCUSSION

Defendant moves to dismiss Plaintiff's complaint in its entirety pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. ECF No. 12-5. Plaintiff opposes the motion. ECF No. 17. The Court discusses each of Defendant's arguments below.

### I.   Time-Bar

Defendant moves to dismiss Plaintiff's first claim for disability discrimination under 42 U.S.C. § 12112(a) and second claim for disclosure of disability information under 42 U.S.C. § 12112(d)(4)(C). ECF No. 12-5 at 14–17. Defendant argues that these claims are time-barred because Plaintiff failed to file this lawsuit within 90 days of receiving the first EEOC right-to-sue-letter in 2020. *Id.* Plaintiff disagrees, maintaining that his claims are timely as this lawsuit is based on his second right-to-sue letter issued in 2025 regarding notating "DB" on the crew sheets between May 2022 and January 2024, which are distinct events. ECF No. 17 at 11–15. Defendant rebuts Plaintiff's contention by arguing that notating "DB" constitutes a continuing course of conduct that occurred from 2016 to 2024, in which case, claims must have been brought within 90 days of the first right-to-sue letter. ECF No. 12-5 at 16–17; ECF No. 18 at 6–7.

"In order to be timely, a claim under the ADA must be filed in federal district court within 90 days of the claimant's receipt of a right-to-sue letter from the EEOC." *Tiberio v. Allergy Asthma Immunology of Rochester*, 664 F.3d 35, 37 (2d Cir. 2011) (citation omitted). "If a plaintiff fails to

file suit within ninety days after a right to sue letter is issued, the plaintiff's claim must be dismissed for statute of limitations reasons, unless the equitable tolling doctrine—'an extraordinary measure that applies only when plaintiff is prevented from filing despite exercising that level of diligence which could reasonably be expected in the circumstances,'—saves the claim." *Gannon v. Continuum Health Partners, Inc.*, No. 06 Civ. 5133, 2007 WL 2040579, at \*3 (S.D.N.Y. July 12, 2007) (quoting *Veltri v. Bldg. Serv. 32B-J Pendion Fund,* 393 F.3d 318, 322 (2d Cir. 2004)).

The Court concludes that notating "DB" on the crew sheets between 2016 and 2018 and between May 2022 and January 2024 are not one continuing action. Although both incidents involve similar facts, they are discrete acts that occurred during different periods. *See LaFontant v. Neale*, No. 18-CV-23, 2019 WL 1953942, at \*5–6 (S.D.N.Y. May 2, 2019) (finding that "Plaintiff's Title VII claim was timely with respect to the second EEOC right-to-sue letter" concerning allegations of hostile work environment and retaliation after December 2017 even though Plaintiff failed to bring a claim based on the first right-to-sue letter that alleged hostile work environment and retaliation concerning events between March 2015 to June 2017). The Court also concludes that Plaintiff is not bringing the present suit to "revive" his claims or to toll the 90-day limit from receiving the first letter. ECF No. 12 at 16–17; ECF No. 18 at 6–7. Plaintiff states that he is "only pursing claims based on his 2025 right-to-sue letter . . . and is not bringing any claims to recover based on the facts that occurred between 2016 and 2018." ECF No. 17 at 13; *contrast with Soso Liang Lo v. Pan Am. World Airways, Inc.* 787 F.2d 827, 828 (2d Cir. 1986) (per curiam) (holding that an action was time-barred because the plaintiff, having failed to initiate a timely lawsuit after receiving the first right-to-sue notice, secured a second notice a few months later that was "concededly based upon a charge involving exactly the same facts as the first

[n]otice"). Therefore, Plaintiff's complaint about the "DB" notation in the present lawsuit was not required to be brought upon receipt of the first letter in 2020 as Defendant argues.

Accordingly, Defendant's motion to dismiss Plaintiff's first and second causes of action is denied as the claims are timely.

## II.    Disability Discrimination Claims

Defendant moves to dismiss Plaintiff's first claim for disability discrimination under 42 U.S.C. § 12112(a) and fourth claim for disability discrimination under N.Y. Exec. Law § 296(a), ECF No. 12-5 at 18–20, arguing that Plaintiff fails to state a claim under either cause of action as noting "DB" itself does not constitute adverse employment action, *id.* at 19–20.  Plaintiff disagrees.  He claims that because he sufficiently alleged that he was labeled as disabled in a document available for all employees, which in and of itself is an adverse action, he met the "significantly lowered" standard of pleading an adverse action under *Muldrow v. City of St. Louis*, 601 U.S. 346 (2024).  ECF No. 17 at 15–19.

"Title I of the ADA prohibits employers from discriminating again[st] any 'qualified individual with a disability because of the disability of such individual' in regard to any aspect of employment." *Dansler-Hill v. Rochester Inst. of Tech.*, 764 F. Supp. 2d 577, 582 (W.D.N.Y. 2011) (quoting 42 U.S.C. § 12112(a)).  "Claims alleging disability discrimination in violation of the ADA are subject to the burden-shifting analysis originally established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *See McMillan v. City of New York*, 711 F.3d 120, 125 (2d Cir. 2013); *see Montaldo v. Cnty. of Suffolk*, No. 21-CV-1272, 2026 WL 878242, at *3 (E.D.N.Y. Mar. 31, 2026) ("The burden-shifting framework also applies to disability discrimination claims under the NYSHRL[.]") (citing *Tafolla v. Heilig*, 80 F.4th 111, 118, 125 (2d Cir. 2023)).  "Under the *McDonnell Douglas* framework, "a plaintiff must first establish a *prima*

*facie* case of discrimination under the ADA, after which the burden of proof shifts to the defendant to 'articulate some legitimate, nondiscriminatory reason for the employer's conduct.'" *Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 71 (2d Cir. 2019) (quoting *McDonnell Douglas*, 411 U.S. at 802).

In accordance with the *McDonnell Douglas* framework, to proceed on an adverse employment action theory, a plaintiff must allege that "(1) the employer is subject to the ADA; (2) the plaintiff is disabled within the meaning of the ADA or perceived to be so by [his] employer; (3) [he] was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; (4) [he] suffered an adverse employment action; and (5) the adverse action was imposed because of [his] disability." *Braccia v. Northwell Health Sys.*, No. 24-2665-CV, 2025 WL 2610704, at *3 (2d Cir. Sept. 10, 2025) (quoting *Davis v. N.Y.C. Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015) (per curiam)).[2] To the extent relevant here, the same requirements apply to Plaintiff's NYSHRL claim. *See Slater v. NYU Langone Health Sys.*, No. 24-CV-03711, 2025 WL 2208292, at *15–16 (E.D.N.Y. Aug. 4, 2025) (holding that because the NYSHRL defines disability more broadly and thus are "construed more liberally than ADA claims," once plaintiff's disability is undisputed, "the analysis of the NYSHRL and ADA disability discrimination claims is the same"). Although "a plaintiff is not required to plead a *prima facie* case [of discrimination under the ADA] under *McDonnell Douglas* to defeat a motion to dismiss," the plaintiff "must still 'demonstrate that [he] suffered an adverse employment action under circumstances giving rise to an inference of discriminatory intent[.]'" *Dooley v. JetBlue Airways Corp.*, 636 F. App'x 16, 21 (2d Cir. 2015) (ellipses, brackets, and citations omitted).

---

[2] Discrimination claims may be brought under a theory of adverse employment action or of failure to provide reasonable accommodation. *See McMillan*, 711 F.3d at 125–26. Because Plaintiff does not allege a failure to provide reasonable accommodation, the Court will only analyze the disability discrimination claims under the theory of adverse employment action.

Here, the central dispute lies in whether an adverse employment action took place. "For decades, courts in this Circuit understood an 'adverse employment action' under federal law to be 'a materially adverse change in the terms and conditions of employment.'" *Mitchell v. Planned Parenthood of Greater New York, Inc.*, 745 F. Supp. 3d 68, 90 (S.D.N.Y. 2024) (quoting *Sanders v. N.Y.C. Hum. Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004)). However, the Supreme Court changed this analysis in *Muldrow*, declaring that it "disapprove[d]" the "materially significant disadvantage" approach. 601 U.S. at 350, 353. Instead, the Supreme Court stated that "an employee must show *some* harm from [an adverse action] to prevail in a Title VII suit[.]" *Id.* at 350 (emphasis added); *see Hinds v. PSEG Long Island LLC*, No. 23-CV-08701, 2026 WL 266010, at *7 (E.D.N.Y. Feb. 2, 2026) ("The Supreme Court clarified in *Muldrow v. City of St. Louis* that an adverse action is one where a plaintiff experienced 'some harm respecting an identifiable term or condition of employment.'" (citation omitted)).

Plaintiff fails to satisfy the adverse employment action prong. Plaintiff argues that the "DB" notation itself constitutes harmful and adverse action. Yet, without alleging anything more to show how the notation adversely affected his employment, the claim is non-actionable as "[e]veryday workplace grievances, disappointments, and setbacks do not constitute adverse employment actions within the meaning of Title VII." *La Grande v. DeCrescente Distrib. Co.*, 370 F. App'x 206, 211 (2d Cir. 2010) (citations omitted); *see Mitchell*, 745 F. Supp. 3d at 91 ("That said, even under *Muldrow*, some workplace events that are unpleasant are not necessarily adverse employment actions."); *Shields v. NYC Health & Hospitals Corp.*, 489 F. Supp. 3d 155, 162 (E.D.N.Y. 2020) ("reprimands[] and name calling typically do not alter the terms and conditions of one's employment" and are not actionable). Plaintiff makes no claim that marking his name

8

with "DB" to indicate his disability altered the terms and conditions of his employment in any way. Without such argument, the notation does not amount to an adverse employment action.

Accordingly, Defendant's motion to dismiss Plaintiff's first and fourth causes of action is granted.

### III.    Unlawful Disclosure Claim

Defendant moves to dismiss Plaintiff's second claim for disclosure of disability information under 42 U.S.C. § 12112(d)(4)(C). ECF No. 12-5 at 21–24. Defendant argues that the ADA confidentiality provision does not apply because Plaintiff's disability was disclosed voluntarily as opposed to Defendant making efforts to obtain the information through an employment-related medical examination or inquiry. *Id.* Defendant also asserts that Plaintiff fails to allege any tangible injury that was caused by the disclosure. *Id.* at 24. Plaintiff disagrees, claiming that "any communication by an employer that is likely to elicit medical information is a disability-related inquiry," which is protected confidential information, and that impermissible inquiries and disclosures are themselves redressable injuries. ECF No. 17 at 19–22.

"The prohibition against discrimination [under the ADA] shall include medical examinations and inquiries." 42 U.S.C. § 12112(d)(1). In handling such medical examinations or inquiries:

> A covered entity shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity.
> [. . .]
> A covered entity may conduct voluntary medical examinations, including voluntary medical histories, which are part of an employee health program available to employees at that work site. A covered entity may make inquiries into the ability of an employee to perform job-related functions.

42 U.S.C. § 12112(d)(4)(A), (B).

In this context, "[a] 'disability-related inquiry' is a question that is likely to elicit information about a disability, such as asking employees about: whether they have been or ever had a disability; the kinds of prescription medications they are taking; and the results of any genetic tests they have had." *Conroy v. N.Y.S. Dep't of Corr. Servs.*, 333 F.3d 88, 96 (2d Cir. 2003) (citation omitted). The "information obtained regarding the medical condition or history of the [employee] [shall be] collected and maintained on separate forms and in separate medical files and is treated as a confidential medical record" save for sharing to certain people such as "supervisors and managers . . . regarding necessary restrictions on the work or duties of the employee and necessary accommodations[.]" 42 U.S.C. § 12112(d)(3)(B)(i), (d)(4)(C). "To prevail on a claim for disclosure of confidential medical information under the ADA, Plaintiff must show: (1) an unauthorized disclosure of [his] confidential medical information; and (2) damages flowing from such disclosure." *Lawson v. Homernuk*, No. 15 CIV. 1510, 2018 WL 2081914, at *2 (S.D.N.Y. Apr. 24, 2018) (citation omitted).

In determining whether Plaintiff's disability was improperly disclosed, it must first be determined whether 42 U.S.C. § 12112 is even implicated. Plaintiff alleges that he first noticed the initials "DB" placed next to his name on the crew sheets that were available to non-managerial employees. ECF No. 1 ¶¶ 31–32. When Plaintiff asked what the notation meant, his supervisors explained that it was to indicate his disability. *Id.* ¶ 36. After this conversation, Plaintiff disclosed his disability to a managerial employee. *Id.* ¶¶ 40–41. Nowhere in the complaint does Plaintiff state that his supervisors or Defendant made inquiries about his disability. *See Fleming v. State Univ. of New York*, 502 F. Supp. 2d 324, 338 (E.D.N.Y. 2007) (stating that defendant's questions to plaintiff about his medical condition was distinguishable from cases involving voluntary disclosures that did not trigger the ADA's confidentiality requirements as they did not "involve[]

allegations that an employer actually asked its employees to provide medical information"). Because Defendant did not make any inquiries about Plaintiff's disability, it cannot be said that 42 U.S.C. § 12112(d), which governs the prohibition of medical examinations and inquiries against discrimination, is implicated.  Because 42 U.S.C. § 12112(d) does not apply, Defendant's argument that a disclosure itself is not a redressable injury is moot.  ECF No. 12-5 at 24.

Accordingly, Defendant's motion to dismiss Plaintiff's second cause of action is granted.

## IV.    Retaliation Claims

Defendant moves to dismiss Plaintiff's (1) third claim for retaliation for opposing discriminatory practices under 42 U.S.C. § 12203(a); (2) fifth claim for retaliation for opposing discriminatory practices under N.Y. Exec. Law§ 296(e); and (3) sixth claim for retaliation for opposing unlawful practices under N.Y. Lab. Law § 740, ECF No. 12-5 at 24–27, arguing that Plaintiff fails to establish a causal connection between filing the EEOC charges and the termination because the events are too temporally remote.  *Id.*; ECF No. 18 at 13–14.  Plaintiff disagrees, arguing that his protected activities encompass more than filing EEOC charges and that he sufficiently alleged a causal connection between his protected activities and the termination.  ECF No. 17 at 22–26.

The Court analyzes each argument in turn.

### A.  ADA and NYSHRL Claims

Title VII prohibits employers from discriminating against an employee because that employee "has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  42 U.S.C. § 2000e-3(a). Similarly, the ADA provides that "[n]o person shall discriminate against any individual because

11

such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter."  42 U.S.C. § 12203(a).  Claims under "the NYSHRL are analyzed under the same framework that applies to retaliation claims under Title VII" and the ADA.  *Harris v. N.Y.C. Hum. Res. Admin.*, No. 20 CIV. 2011, 2022 WL 3100663, at *15 (S.D.N.Y. Aug. 4, 2022) (quotation marks and citations omitted); *see Schultz v. Weatherhunters, Inc.*, No. 24-CV-02852, 2025 WL 2781344, at *5 (S.D.N.Y. Sept. 30, 2025).

To "establish a *prima facie* case of retaliation, [Plaintiff] must show that: (1) he engaged in an activity protected by the ADA; (2) the employer was aware of this activity; (3) the employer took adverse employment action against him; and (4) a causal connection exists between the alleged adverse action and the protected activity." *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) (citation omitted).  At a motion to dismiss stage, "the allegations in the complaint need only give plausible support to the reduced *prima facie* requirements that arise under *McDonnell Douglas* in the initial phase of a Title VII litigation.'" *Farmer v. Shake Shack Enters., LLC*, 473 F. Supp. 3d 309, 331 (S.D.N.Y. 2020) (quoting *Duplan v. City of New York*, 888 F.3d 612, 625 (2d Cir. 2018)).  Thus, "[f]or a retaliation claim to survive a motion to dismiss, 'the plaintiff must plausibly allege that: (1) defendant[] discriminated—or took an adverse employment action—against him, (2) because he has opposed any unlawful employment practice.'" *Id.* (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015)).

The Court first turns to whether Plaintiff engaged in a protected activity.  Regarding the third cause of action alleging retaliation under the ADA, Plaintiff alleges that he participated in two protected activities.  First, unlike his disability discrimination claims to which Plaintiff states that he is "not bringing any claims" related to the first EEOC charge, ECF No. 17 at 13,

12

Plaintiff does argue that both the first and second EEOC charges are relevant to his third claim for retaliation, ECF No. 1 ¶ 87.  Plaintiff additionally claims that his EEOC investigation following the second EEOC charge was a protected activity.  *Id.*[3]  Regarding the fifth cause of action alleging retaliation under the NYSHRL, Plaintiff alleges that his protected activities involved filing the two EEOC charges and a NYSDHR complaint.[4]  *Id.* ¶¶ 100, 102.

Plaintiff plausibly alleged that he engaged in protected activities by filing the EEOC charges and the NYSDHR complaint related to Defendant's discriminatory practice about Plaintiff's disability.  The parties do not dispute that these filings constitute protected activities, and the Court agrees.  *See Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 223 (2d Cir. 2001) ("Her filing of a complaint with the EEOC is an activity protected by the ADA."); *see also Collazo v. Cnty. of Suffolk*, 163 F. Supp. 3d 27, 51 (E.D.N.Y. 2016) ("[I]t is beyond dispute that Plaintiffs' NYSDHR Complaint constitutes a protected activity.").

However, participating in an EEOC investigation related to Defendant's discriminatory practice cannot be a separate activity that is distinguishable from Plaintiff's filing of the second EEOC charge.  This is because an EEOC investigation is a component of an EEOC charge.  *See* 42 U.S.C. § 2000e-5(b) (stating that whenever an aggrieved employee alleges an employer engaged in unlawful employment practice, the Commission shall serve a notice of the charge . . . on such employer . . . within ten days, and shall make an investigation thereof."); *E.E.O.C. v. Shell Oil Co.*, 466 U.S. 54, 63 (1984) ("After a charge has been filed, the EEOC conducts an

_____

[3] In the complaint, Plaintiff states that his activities included "filing his EEOC charges and continuing to pursue his second EEOC charge."  ECF No. 1 ¶ 87.  Because Plaintiff distinguishes filing EEOC charges from pursuing the second EEOC charge, the complaint states that he participated in an EEOC investigation following his second EEOC charge, *id.* ¶ 50, and Plaintiff discusses his participation in the EEOC investigation as the protected activity in his opposition to Defendant's motion, ECF No. 17 at 25, the Court understands that his "pursu[it] [of] his second EEOC charge" refers to his participation in the EEOC investigation.

[4] Plaintiff states that after he requested that the charges be filed with the NYSDHR, "upon information and belief[,] the charges were in fact filed as complaints with the NYSDHR[.]"  ECF No. 1 ¶ 100.

13

investigation of the allegations contained therein."). Therefore, the Court will not separately analyze the EEOC investigation as a protected activity.

The Court next turns to whether Plaintiff plausibly alleged a causal connection. A causal connection can be shown "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Littlejohn v. City of New York*, 795 F.3d 297, 319 (2d Cir. 2015) (quoting *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000)). Temporal proximity is one way for the plaintiff to indirectly show causal connection. *See Vega*, 801 F.3d at 90 ("A retaliatory purpose can be shown indirectly by timing: protected activity followed closely in time by adverse employment action.").

Plaintiff failed to plausibly allege a causal connection between the first EEOC charge and the termination. Plaintiff filed the first EEOC charge in October 2018, but was not terminated until January 2024. ECF No. 1 ¶¶ 43, 51–52. "[W]here a plaintiff relies on temporal proximity alone, the protected activity and the adverse action must occur 'very close together.'" *Sealy v. State Univ. of New York at Stony Brook*, 834 F. App'x 611, 614 (2d Cir. 2020) (citation omitted). Here, the gap of five years in between the first EEOC charge and the termination is too attenuated to sufficiently establish a causal connection. *See De Figueroa v. New York*, 403 F. Supp. 3d 133, 157 (E.D.N.Y. 2019) ("There is no firm outer limit to the temporal proximity required, but most courts in the Second Circuit have held that a lapse of time beyond two or three months will break the causal inference." (citation omitted)). Therefore, Plaintiff failed to plausibly allege a causal connection regarding the first EEOC charge.

Contrarily, Plaintiff plausibly alleged a causal connection regarding the second EEOC charge and the NYSDHR complaint.  First, unlike the first EEOC charge, the second EEOC charge is "very close" in time with the termination, *Sealy*, 834 F. App'x at 614, as the EEOC investigation was still pending when Plaintiff was terminated, ECF No. 1 ¶ 50, leaving no gap at all.

Second, Plaintiff does not rely on temporal proximity alone to support his retaliation claims regarding the second EEOC charge and the NYSDHR complaint.  Rather, Plaintiff alleges that he was subject to differential treatment compared to other employees as a result of his protected activities.  Plaintiff alleges that Defendant terminated him for failing to report to work for shifts that he had not signed up for.  ECF No. 17 at 24.  Plaintiff claims that he was automatically signed up for extra shifts due to a computer glitch; yet, although this glitch happened "frequently to many employees at that time, . . . none of them were terminated—or even disciplined—for failing to report to work for such a shift, like [Plaintiff] was." *Id.*  Plaintiff thus relies on "circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct" to support his retaliation claims. *Littlejohn*, 795 F.3d at 329.  Alleging such circumstantial evidence is sufficient for Plaintiff to establish a causal connection at the pleading stage.  *See Kopchik v. Town of East Fishkill, New York*, 759 F. App'x 31, 36 (2d Cir. 2018) (holding that when drawing all reasonable inferences from the complaint at the pleading stage, plaintiff plausibly alleged that he was terminated nine months after filing an EEOC age-discrimination charge, considering that the town rehired all similarly positioned workers except plaintiff).  Therefore, the Court concludes that Plaintiff plausibly alleged that he was retaliated against because he filed the second EEOC charge and the NYSDHR complaint.

Accordingly, Defendant's motion to dismiss Plaintiff's third and fifth causes of action is granted in part insofar as claims related to the first EEOC charge are dismissed. Otherwise, the motion is denied.

### B. NYLL § 740 Claim

NYLL § 740(2), also known as the whistleblower statute, prohibits an employer from "tak[ing] any retaliatory action against an employee . . . because such employee . . . discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer that the employee reasonably believes is in violation of law, rule or regulation," or because the employee "objects to, or refuses to participate in any such activity, policy or practice." *See Klein v. Brookhaven Health Care Facility*, No. 23-7771-CV, 2024 WL 5074485, at *1–2 (2d Cir. Dec. 11, 2024) (summary order). "To state a claim under section 740(2), a plaintiff must allege: '(1) activity protected by the statute; (2) retaliatory action; and (3) some causal connection between the protected activity and the adverse action.'" *Khan v. Meep New York, Inc.*, No. 24-CV-06929, 2026 WL 861170, at *4 (E.D.N.Y. Mar. 30, 2026) (quoting *Callahan v. HSBC Sec. (USA) Inc.*, 723 F. Supp. 3d 315, 326 (S.D.N.Y. 2024)).

Defendant only discusses Plaintiff's EEOC charges when referencing protected activity. ECF No. 12-5 at 25. However, Plaintiff alleged that he engaged in protected activities under NYLL § 740 by expressing his opposition to Defendant's discriminatory practice when he (1) requested that the "DB" notation be removed, and (2) filed charges of discrimination with the EEOC. ECF No. 1 ¶¶ 110–13. These are protected activities. *See* NYLL § 740(2)(a) (discussing an employee's disclosure to a "public body" concerning the employer's activity, policy, or practice that the employee reasonable believes violates the law); *see also Khan*, 2026 WL 861170, at *4

(approaching defendants to object to dangerous working conditions, which plaintiffs reasonably believed violated the law, was protected activity under NYLL § 740).

Plaintiff first requested that the "DB" notation be removed sometime between 2016 and October 13, 2018, and filed his first EEOC charge on October 13, 2018. ECF No. 1 ¶¶ 32, 40–41, 43. Plaintiff again requested that the notation be removed sometime between May 2022 and January 13, 2023, and filed his second EEOC charge on January 13, 2023. *Id.* ¶¶ 47–49. Defendant argues that Plaintiff failed to establish a causal connection to support his NYLL § 740 retaliation claim because the EEOC filings are too remote from the termination. ECF No. 12-5 at 25–26.

For the reasons discussed in the Court's analysis of Plaintiff's ADA and NYSHRL claims, the Court concludes that Plaintiff's request to remove the "DB" notation between 2016 and 2018 and Plaintiff's filing of the first EEOC charge is too remote to plausibly allege a causal connection. *See Dinome v. Cordis US Corp.*, No. 23-CV-11173, 2024 WL 3888799, at *7 (S.D.N.Y. Aug. 21, 2024) (when discussing NYLL § 740 retaliation claims, stating that "district courts within the Second Circuit have consistently held that 'the passage of two to three months between the protected activity and the adverse employment action does not allow for an inference of causation.'" (quotation marks and citations omitted)).

However, in addition to temporal proximity, causation can be supported at the pleading stage with allegations of circumstantial or indirect evidence showing that the plaintiff suffered disparate treatment compared to other employees. *See Callahan*, 723 F. Supp. 3d at 325 (alleging the employer's "inconsistent application of policies and its differential treatment of [plaintiff] compared with that of other employees," temporal proximity, and pretext was sufficient to "clear[] the relatively low bar of adequately pleading causation for his dismissal claim"). Therefore, for the reasons discussed in the Court's analysis of Plaintiff's ADA and NYSHRL claims, Plaintiff

plausibly pled that he was retaliated against by requesting Defendant to remove the "DB" notation between May 2022 and January 2023 and filing the second EEOC charge.

Accordingly, Defendant's motion to dismiss Plaintiff's sixth cause of action is granted in part insofar as claims related to requesting the removal of the "DB" notation between 2016 and October 13, 2018, and the first EEOC charge are dismissed. Otherwise, the motion is denied.

## V.    Leave to Amend

Plaintiff has requested leave to amend the complaint. ECF No. 17 at 26–27. Rule 15(a)(2) directs district courts to give plaintiffs leave to replead "when justice so requires." Fed. R. Civ. P. 15(a)(2). However, the Second Circuit has declined to allow amendment in cases in which an additional pleading would be futile. *See e.g., Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). In this case, it would not be futile to amend the complaint regarding Plaintiff's (1) first cause of action for disability discrimination under 42 U.S.C. § 12112(a); (2) second cause of action for disclosure of disability information under 42 U.S.C. § 12112(d)(4)(C); and (3) fourth cause of action for disability discrimination under N.Y. Exec. Law § 296(a). Plaintiff may file an amended complaint by August 24, 2026.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART. Plaintiff's first cause of action for disability discrimination under 42 U.S.C. § 12112(a), second cause of action for disclosure of disability information under 42 U.S.C. § 12112(d)(4)(C), and fourth cause of action for disability discrimination under N.Y. Exec. Law § 296(a) are DISMISSED WITHOUT PREJUDICE. Plaintiff's third cause of action for retaliation for opposing discriminatory practices under 42 U.S.C. § 12203(a), fifth cause of action for retaliation for opposing discriminatory practices under N.Y. Exec. Law§ 296(e) regarding claims

related to the first EEOC charge, and sixth cause of action for retaliation for opposing unlawful practices under N.Y. Lab. Law § 740 regarding claims related to requesting the removal of the "DB" notation between 2016 and October 13, 2018, and the first EEOC charge are DISMISSED WITH PREJUDICE.

Plaintiff may file an amended complaint by August 24, 2026. If Plaintiff does not file an amended complaint by this date, his first cause of action for disability discrimination under 42 U.S.C. § 12112(a), second cause of action for disclosure of disability information under 42 U.S.C. § 12112(d)(4)(C), and fourth cause of action for disability discrimination under N.Y. Exec. Law § 296(a) will be dismissed with prejudice.

IT IS SO ORDERED.

Dated: July 23, 2026
     Rochester, New York

 

HON. FRANK P. GERACI, JR.
United States District Court
Western District of New York